Case 8:22-cv-02259-VMC-JSS   Document 1-1   Filed 10/03/22   Page 1 of 21 PageID 100

EXHIBIT 1

## IN THE COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
## GENERAL CIVIL DIVISION

**JENNY GARCIA BERRIOS AND
JORGE ANTONIO LOPEZ
MALDONADO**,

Case No.:

Plaintiffs,

v.

**BPS DIRECT, LLC d/b/a BASS PRO
SHOPS; TEXSPORT
INCORPORATED; and THE
COLEMAN COMPANY, INC.**

Defendant.

---

## **COMPLAINT**

---

Plaintiffs, JENNY GARCIA BERRIOS and JORGE ANTONIO LOPEZ MALDONADO,

individually, by and through the undersigned counsel, and hereby file their Complaint against the

Defendants, BPS DIRECT, LLC d/b/a BASS PRO SHOPS (hereinafter "BPS"), TEXSPORT INC.

(hereinafter "TEXSPORT"), and THE COLEMAN COMPANY, INC. (hereinafter

"COLEMAN") and allege as follows:

### **THE PARTIES, JURISDICTION & VENUE**

1.      This is an action for damages that exceeds the sum of THIRTY THOUSAND

DOLLARS ($30,000.00), exclusive of costs, interest, and attorneys' fees (the estimated value of

Plaintiffs' claim is in excess of the minimum jurisdictional threshold required by this Court). The

actual value of Plaintiffs claims will be determined by a fair and just jury in accordance with

Article 1, Section 21, Fla. Const.

2.       At all times material hereto, Plaintiff Jenny Garcia Berrios was and is a resident of Tampa Hillsborough County and is otherwise *sui juris*.

3.       At all times material hereto, Plaintiff Jorge Antonio Lopez Maldonado was and is a resident of Tampa Hillsborough County and is otherwise *sui juris*.

4.       At all times material hereto, Defendant BPS Direct, LLC d/b/a Bass Pro Shops, was and is a Delaware limited liability company, duly authorized to do business and is doing business in the State of Florida including operating the store located at 10501 Palm River Rd. Tampa, FL 33619. Defendant BPS may be served by serving its registered agent C T Corporation System at 1200 South Pine Island Road, Plantation, FL 33324.

5.       At all times material hereto, Defendant Texsport Incorporated, is Iowa corporation, with its principal place of business in Texas, duly authorized to do business and is doing business in the state of Florida. Defendant Texsport may be served by serving its registered agent Jamile A Ashmore at 11337 Quail Road Dallas, Texas 75238.

6.       At all times material hereto, Defendant, The Coleman Company, Inc., was and is a Delaware corporation, with its principal place of business in Illinois, but duly authorized and is doing business in the State of Florida. Defendant Coleman may be served by serving its registered agent Corporation Service Company 1201 Hays Street Tallahassee, FL 32301.

7.       Defendant BPS is in the business of importing, marketing, advertising, designing, manufacturing, and distributing outdoor products, including but not limited to, butane fuel gas canisters and portable stoves, such as the Texsport Model 14250 Portable Butane Stove – serial/lot # 01.907 (hereinafter "Subject Stove"), and Coleman Portable Butane Canister ("Subject Canister").

8.       Defendant Texsport Inc. is in the business of importing, marketing, advertising,

designing, manufacturing, and distributing outdoor and camping products, including but not limited to, portable stoves like the Subject Stove.

9.      Defendant The Coleman Company, Inc., is in the business of importing, marketing, advertising, designing, manufacturing, and distributing outdoor and camping products, including but not limited to, butane fuel gas canisters like the Subject Canister to consumers within the State of Florida and namely through Defendant BPS.

10.     This Court is authorized to exercise personal jurisdiction over BPS pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the claims stated herein arise out of BPS:

   a.  Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;

   b.  Committing a tortious act within Florida; or

   c.  Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) BPS was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured by BPS anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use;

   d.  Voluntary registering to do business in the state of Florida

11.     Court is authorized to exercise personal jurisdiction over BPS pursuant to the Florida Long-Arm Statute, Fla. Stat. § 48.193(2), because BPS is engaged in substantial and not isolated activity within Florida.

12.     This Court is authorized to exercise personal jurisdiction over Texsport pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the claims stated herein arise out of Texsport:

    a.  Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;

    b.  Committing a tortious act within Florida; or

    c.  Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) Texsport was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured by Texsport anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use;

13.    Court is authorized to exercise personal jurisdiction over Texsport pursuant to the Florida Long-Arm Statute, Fla. Stat. § 48.193(2), because Texsport is engaged in substantial and not isolated activity within Florida.

14.    This Court is authorized to exercise personal jurisdiction over Coleman pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the claims stated herein arise out of Coleman:

    a.  Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;

    b.  Committing a tortious act within Florida; or

    c.  Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) Coleman was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured by Coleman anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use;

    d.  Voluntary registering to do business in the state of Florida

15.    Court is authorized to exercise personal jurisdiction over Coleman pursuant to the Florida Long-Arm Statute, Fla. Stat. § 48.193(2), because Coleman is engaged in substantial and not isolated activity within Florida.

## **FACTS**

16.     Plaintiff Jenny Garcia Berrios is a self-employed individual who works with drywall with her husband, Plaintiff Jorge Antonio Lopez Maldonado living in Tampa Bay, Florida,

17.     In approximately 2019, Plaintiffs purchased the Subject Stove from BPS's store located at 10501 Palm River Rd., Tampa, FL 33619.

18.     In approximately early 2021, Plaintiffs had purchased a three pack of Coleman Portable Butane Style Canisters, including the Subject Canister in the incident from BPS's store located at 10501 Palm River Rd., Tampa, FL 33619.

19.     At all times material hereto, Plaintiffs had read the manuals of both the Subject Stove and Subject Canister prior to use.

20.     On or about May 31, 2021, Plaintiffs went on a boat trip to Treasure Island to enjoy a nice day at the beach and grill.

21.     Plaintiff Jorge Antonio Lopez Maldonado began to take the Subject Stove out of the box with instructions and pieces. He followed each step as indicated to be able to "build" the Subject Stove.

22.     Plaintiff Jorge Antonio Lopez Maldonado placed the Subject Canister in the compartment on the right side of the Subject Stove, in accordance with the manufacturers' warnings and instructions.

23.     Next, Plaintiff Jorge Antonio Lopez Maldonado placed a medium size pan with a bit of cooking oil on the stove and moved the Subject Stove's control knob on medium temperature and let it heat up for a couple of minutes.

24.     Plaintiff Jorge Antonio Lopez Maldonado then returned to the boat just a couple of feet away to gather additional items to set up for the beach day, while Plaintiff Jenny Garcia Berrios

was preparing to place seasoned fish filet (in another bowl) onto the pan.

25.     Approximately less than a minute later, while Plaintiff Jenny Garcia Berrios was merely a few feet away, suddenly, and without warning, the Subject Stove and Subject Canister exploded and engulfed Plaintiff Jenny Garcia Berrios in flames, before she even had a chance to put the fish filet on the pan.

26.     Plaintiff Jenny Garcia Berrios' legs were completely burnt, and three fingers on her right hand.

27.     Plaintiff Jorge Antonio Lopez Maldonado immediately drove his wife to the nearest emergency medical burn clinic at Tampa General Hospital.

28.     Plaintiff Jenny Garcia Berrios had to endure many painful debridement's of her wounds, which required both intravenous and oral pain medication to be completed.

29.     Due to the severity of her burns, Plaintiff Jenny Garcia Berrios was forced to undergo excisions and skin grafting on her legs.

30.     Plaintiff Jenny Garcia Berrios spent over two (2) weeks in the hospital undergoing treatment for her injuries as well as physical and occupational therapy.

31.     Plaintiff Jenny Garcia Berrios' burns remain unhealed, and she remains in constant, debilitating pain.

32.     At all times material hereto, Plaintiffs were using the Subject Stove according to the manufacturers' warnings and recommendations.

33.     At all times material hereto, Plaintiffs were using the Subject Canister according to the manufacturers' warnings and recommendations.

34.     The warnings or recommendations on Subject Stove were defective, insufficient, or misleading or, alternatively, not well drafted, making the joint use of the Subject Stove and the

Subject Canister inherently dangerous and the proximate cause of the Plaintiff Jenny Garcia Berrios' injuries and Plaintiffs damages. In the alternative, the Subject Stove and/or the Subject Canister contains a design defect(s).

35.     The warnings or recommendations on the Subject Canister were defective, insufficient, or misleading or, alternatively, not well drafted, making the joint use of the Subject Canister and the Subject Stove inherently dangerous and the proximate cause of the Plaintiff Jenny Garcia Berrios' injuries and Plaintiffs damages. In the alternative, the Subject Stove and/or the Subject Canister contain a design defect(s).

36.     The design of the Subject Stove is unreasonably dangerous and creates a substantial risk to the consumer and the public when utilized in a foreseeable manner.

37.     The defective design of the Subject Stove manifests in a sudden and unexpected manner, without prior warnings to the consumer and others in its proximity.

38.     The design of the Subject Canister is unreasonably dangerous and creates a substantial risk to the consumer and to the public when utilized in a foreseeable manner.

39.     The defective design the Subject Canister manifests in a sudden and unexpected manner, without prior warnings to the consumer and others in its proximity.

40.     There are no warnings on the Subject Stove alerting consumers of the risk that it can explode while used in accordance with the manufacturers' warnings and recommendations.

41.     There are no warnings on the Subject Canister alerting consumers of the risk that it can explode while used in accordance with the manufacturers' warnings and recommendations.

42.     Had the Subject Stove contained adequate warnings, or had the Subject Stove been correctly designed or in a fashion consistent with industry standards, the explosion would not have occurred, and Plaintiff Jenny Garcia Berrios injuries and Plaintiffs damages would not have

occurred.

43.     Had the Subject Canister contained adequate warnings, or had the Subject Canister been correctly designed or in a fashion consistent with industry standards, the explosion would not have occurred, and Plaintiff Jenny Garcia Berrios injuries and Plaintiffs damages would not have occurred.

44.     Defendants BPS and Coleman failed to adequately warn the user(s), here, Plaintiffs, that the Subject Canister is more inherently dangerous than the user would expect.

45.     Defendant Texsport failed to adequately warn the user(s), here, Plaintiffs, that the Subject Stove is more inherently dangerous than the user would expect.

46.     The Subject Stove had not been altered since it was originally distributed and/or retailed by Defendants and ultimately purchased by Plaintiffs.

47.     The Subject Canister had not been altered since it was originally distributed by Defendants and ultimately purchased by Plaintiffs.

48.     As a result of the explosion, Plaintiff Jenny Garcia Berrios suffered damages in the form of, among others: (a) first, second and third degree burns to the right hand and lower extremities, requiring painful debridement and ultimately excision and grafting of undamaged skin to the burnt areas; (b) extreme pain and suffering; (c) thick scarring resulting in limited mobility; (d) loss of enjoyment of life; (e) lost income and lost earning capacity.

## CONDITIONS PRECEDENT

49.     All conditions precedent have been performed or have been excused.

## COUNT I: NEGLIGENCE BPS DIRECT, LLC D/B/A BASS PRO SHOPS

50.     Plaintiffs adopt and re-allege paragraphs one (1) through forty-nine (49) as if set forth fully herein.

51.     At all times material hereto, Defendant BPS was the retailer of the Subject Stove and Subject Canister.

52.     At all times material hereto, Defendant BPS owed a duty to the consuming public in general, and to Plaintiff Jenny Garcia Berrios, to exercise reasonable care to inspect and sell both products free from unreasonable risk of harm to owners and users, when said products are used in their intended manner.

53.     Defendant BPS also owed a duty to its customers, and specifically to Plaintiff Jenny Garcia Berrios, to exercise reasonable care in warning Jenny Garcia Berrios of the dangers of the Subject Stove and Subject Canister of which it knew, or should have known of, at the time the Subject Stove and Subject Canister left its control.

54.     Defendant BPS knew or should have known of the dangerous propensities of the Subject Stove to explode when used by the consumer to cook with the Subject Canister and had a duty to exercise reasonable care in warning foreseeable users of the dangerous propensities of the Subject Stove and Subject Canister.

55.     The dangerous propensities of the Subject Stove and Subject Canister existed at the time it was sold by Defendant BPS and continued to exist up to and including the time of the occurrence complained of herein.

56.     Defendant BPS sold the Subject Stove that had the dangerous propensity of exploding when used by the consumer to cook with the Subject Canister and failed to add a warning of this dangerous propensity.

57.     At all times material hereto, there was no substantial change to the Subject Stove or Subject Canister since it left the possession and control of Defendant BPS.

58.     The Subject Stove and Subject Canister were used in the manner they were intended

to be used and, in a manner, reasonably foreseeable by Defendant BPS; namely, Plaintiffs used the Subject Stove, together with the Subject Canister and a medium sized cooking pan, to cook a meal for their family.

59.    Defendant BPS negligently sold the Subject Stove and Subject Canister in defective and unreasonably dangerous conditions at the time that they were placed in the stream of commerce.

60.    Defendant BPS knew or should have known of the dangerous and defective design of the Subject Stove and Subject Canister, including the possibility that it would explode when used by the consumer to cook.

61.    Plaintiffs relied upon Defendant BPS's labeling (or lack thereof) when they purchased the Subject Stove and Subject Canister from Defendant BPS.

62.    Defendant BPS's breach of its duty of care caused personal injuries and damages to Plaintiffs, while using the Subject Stove and Subject Canister in a reasonably foreseeable manner, thereby rendering it defective, unsafe, and dangerous for use by consumers.

63.    Defendant BPS breached its duty of care by:

a.  Selling the Subject Stove despite the lack of a warning on either the product or its label, and despite the foreseeable dangers associated when used without said warnings.
b.  Failing to ensure that a warning label was affixed to the product itself or its label or packaging, that provided that the Subject Stove, when used as intended, was extremely dangerous and could explode.
c.  Failing to ensure that a warning label was affixed to the product itself or its label or packaging, that provided precautionary warnings of the propensity to explode.
d.  Selling the Subject Canister despite the lack of a warning of its dangerous propensity on either the product or its label, and despite the foreseeable dangers associated when used without said warnings.
e.  Selling the Subject Canister despite the fact that its warning label does not comply with the reporting requirements under the Consumer Product Safety Commission ("CPSC") and therefore, violates the Federal Hazardous Substances Act ("FHSA").

64.    Defendant BPS's breach of its duty of care was the direct and proximate cause of the severe injuries sustained by Plaintiff Jenny Garcia Berrios and Plaintiffs damages.

WHEREFORE, Plaintiffs demand judgment for damages against Defendant BPS, together with all costs of this action, and such other additional relief as this court may deem proper.

## COUNT II: BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY AGAINST BPS DIRECT, LLC D/B/A BASS PRO SHOPS

65.    Plaintiffs re-allege and reaffirm paragraphs one (1) through forty-nine (49) as if set forth fully herein.

66.    Defendant BPS is a merchant of many household products, including portable butane gas stoves and portable butane canisters.

67.    At all times material hereto, Defendant BPS impliedly warranted that the Subject Stove and Subject Canister were of merchantable quality.

68.    At all times relevant to this action, the Subject Stove and Subject Canister were not merchantable, and therefore, Defendant BPS breached its aforesaid warranty by, inter alia:

   a. Selling the Subject Stove and Subject Canister, which was completely devoid of any warning as to the hazards of its use, as well as the hazards of the Subject Stove when used with the Subject Canister;
   b. By virtue of the fact that the Subject Stove and Subject Canister exploded while being used in its intended and in a reasonably foreseeable fashion; and

   c. The Subject Stove and Subject Canister were not of merchantable quality, as warranted by Defendant BPS, in that it was defectively designed, manufactured, and sold, thereby dangerously exposing the users of the Subject Stove and Subject Canister, and those in the near vicinity, to serious injury.

69.    Plaintiffs reasonably relied on Defendant BPS's representations that the Subject Stove and Subject Canister were safe and free of defects, and a safe means of meal preparation.

70.    As a direct and proximate result of Defendant BPS's breach of the implied warranty of merchantability, Plaintiff Jenny Garcia Berrios sustained severe and permanent injuries and

Plaintiffs suffered damages.

WHEREFORE, Plaintiffs demands judgment for damages against Defendant BPS, together with all costs of this action, and such other additional relief as this court may deem proper.

## COUNT III: BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST BPS DIRECT, LLC D/B/A BASS PRO SHOPS

71.     Plaintiffs re-allege and reaffirm paragraphs one (1) through forty-nine (49) as if set forth fully herein.

72.     Defendant BPS impliedly warranted to members of the public, including Plaintiffs, that the Subject Stove was fit for its particular purpose, namely, for the purpose of food preparation, and that the Subject Canister was fit for its particular purpose, namely, for the purpose of providing an initiation/fuel source for the Subject Stove for food preparation.

73.     Plaintiffs relied on Defendant BPS's skill and judgment to furnish the Subject Stove and Subject Canister as fit for its particular purpose.

74.     The Subject Stove and Subject Canister were not fit for their particular purpose, because they had a propensity to explode while used in their intended manner, and lead to the serious injuries described herein.

75.     The Subject Stove and Subject Canister were not safe for their intended use, in that they were defectively designed, manufactured, and sold, thereby dangerously exposing the users of the Subject Stove and Subject Canister, as well as those around the product, to serious injury.

76.     Plaintiffs reasonably relied on Defendant BPS's representation that the Subject Stove and Subject Canister were safe and free of defects, and a safe means of food preparation.

77.     As a direct and proximate result of Defendant BPS's breach of the implied warranty of fitness for a particular purpose, Plaintiff Jenny Garcia Berrios sustained severe and permanent injuries and Plaintiffs suffered damages.

WHEREFORE, Plaintiffs demand judgment for damages against Defendant BPS, together with all costs of this action, and such other additional relief as this court may deem proper.

## COUNT III: STRICT LIABILITY AGAINST BPS DIRECT, LLC D/B/A BASS PRO SHOPS

78.     Plaintiffs re-allege and reaffirm paragraphs one (1) through forty-four (44) as if set forth fully herein.

79.     At all times material hereto, Defendant BPS sold the Subject Stove and Subject Canister to Plaintiffs in its ordinary course of business.

80.     Defendant BPS sold the Subject Stove and Subject Canister in defective and unreasonably dangerous condition.

81.     The Subject Stove was defective in that it had a propensity to explode while used in its intended manner. This is a dangerous propensity for a portable butane gas stove, which was designed to be used for cooking with butane gas canisters like the Subject Canister. Similarly, the Subject Canister had a propensity to fail while being used to heat food for the Subject Stove while used in its intended manner.

82.     Said dangerous condition existed at the time the Subject Stove and Subject Canister were sold by Defendant BPS and continued to exist up to and including the time of the occurrence complained of herein.

83.     Plaintiffs used the Subject Stove and Subject Canister in the manner that was intended and expected by Defendant BPS.

84.     Defendant BPS's failure to adequately warn of the defective and unreasonably dangerous condition of the Subject Stove and Subject Canister was the direct and proximate cause of the severe injuries and damages sustained by Plaintiffs.

85.     Additionally, the Subject Canister's warning label does not comply with the

reporting requirements under the Consumer Product Safety Commission ("CPSC") and is therefore in violation of the Federal Hazardous Substances Act ("FHSA").

86.     As a direct and proximate cause of Defendant BPS selling the unreasonably dangerous Subject Stove and Subject Canister, Defendant BPS is strictly liable to Plaintiffs.

87.     As a direct and proximate cause of Defendant BPS selling the unreasonably dangerous Subject Stove and Subject Canister, Plaintiff Jenny Garcia Berrios sustained severe and permanent injuries and Plaintiffs suffered damages.

WHEREFORE, Plaintiffs demand judgment for damages against Defendant BPS, together with all costs of this action, and such other additional relief as this court may deem proper.

## COUNT IV: NEGLIGENCE AGAINST THE COLEMAN COMPANY, INC.

88.     Plaintiffs re-allege and reaffirm paragraphs one (1) through forty-nine (49) as if set forth fully herein.

89.     At all times material hereto, Defendant Coleman distributed the Subject Canister in its ordinary course of business.

90.     At all times material hereto, Defendant Coleman owed a duty to the consuming public in general, and to Plaintiffs in particular, to exercise reasonable care to manufacture, design, import, and sell a product free from unreasonable risk of harm when used in its intended manner.

91.     At all times material hereto, Defendant Coleman owed a duty to its customers, and specifically to Plaintiffs, to exercise reasonable care in warning them of the dangers of the Subject Canister of which it knew, or should have known of, at the time the Subject Canister left Coleman's control.

92.     Defendant Coleman negligently placed the Subject Canister into the stream of commerce in a defective and unreasonably dangerous condition.

93.     Defendant Coleman knew or should have known of the dangerous and defective condition of the Subject Canister, including the possibility that it would explode when used by consumers like Plaintiffs to cook with the Subject Stove and had a duty to exercise reasonable care in warning foreseeable users of the dangerous propensities of the Subject Canister.

94.     The dangerous propensities of the Subject Canister existed at the time it was distributed by Defendant Coleman and continued to exist up to and including the time of the occurrence complained of herein.

95.     Defendant Coleman distributed the Subject Canister that had the dangerous propensity of exploding when used by the consumer to cook with the Subject Stove and failed to add a warning of this dangerous propensity.

96.     Plaintiffs relied upon Defendant Coleman's labeling (or lack thereof) when they purchased the Subject Canister.

97.     The Subject Canister was used in the manner it was intended to be used and, in a manner, reasonably foreseeable by Defendant Coleman; namely, Plaintiffs used the Subject Canister, together with the Subject Stove and a medium size pan, to prepare a meal for their family.

98.     At all times material hereto, there was no substantial change to the Subject Canister since it left the possession and control of Defendant Coleman.

99.     Defendant Coleman breached its duty of care by placing the Subject Canister, which was defective and posed an unreasonable risk of harm to consumers, into the stream of commerce by:

   a. Selling the Subject Canister despite the lack of a warning of its dangerous propensity on either the product or its label, and despite the foreseeable dangers associated when used without said warnings.
   b. Failing to ensure that a warning label was affixed to the product itself or its label or packaging, that provided that the Subject Canister, when used as intended, was extremely dangerous and could explode.

Page **15** of **21**

c. Failing to ensure that a warning label was affixed to the product itself or its label or packaging, that provided precautionary warnings of the propensity to explode.

100.     As a direct and proximate result of Defendant Coleman's breach of its duty of care, Plaintiff Jenny Garcia Berrios sustained severe and permanent injuries and Plaintiffs sustained damages.

WHEREFORE, Plaintiffs demands judgment for damages against Defendant COLEMAN, together with all costs of this action, and such other additional relief as this court may deem proper.

## COUNT V: STRICT LIABILITY AGAINST THE COLEMAN COMPANY, INC.

101.     Plaintiffs re-allege and reaffirm paragraphs one (1) through forty-four (44) as if set forth fully herein.

102.     At all times material hereto, Defendant Coleman distributed the Subject Canister in its ordinary course of business.

103.     Defendant Coleman placed the Subject Canister into the stream of commerce in a defective and unreasonably dangerous condition.

104.     The Subject Canister was defective in that it had a propensity to explode while used in its intended manner. This is a dangerous propensity for a butane gas canister, which was designed to be used to fuel portable butane gas stoves.

105.     Said dangerous condition existed at the time the Subject Canister was distributed by Defendant Coleman and continued to exist up to and including the time of the occurrence complained of herein.

106.     Plaintiffs used the Subject Canister in the manner that was intended and expected by Defendant Coleman.

107.     Additionally, the Subject Canister's warning label does not comply with the

reporting requirements under the Consumer Product Safety Commission ("CPSC") and is therefore in violation of the Federal Hazardous Substances Act ("FHSA").

108.    As a direct and proximate cause of Defendant Coleman's failure to adequately warn of the defective and unreasonably dangerous condition of the Subject Canister, Plaintiff Jenny Garcia Berrios sustained severe and permanent injuries and Plaintiffs sustained damages.

109.    As a direct and proximate cause of Defendant Coleman placing the unreasonably dangerous Subject Canister into the stream of commerce, Plaintiff Jenny Garcia Berrios sustained severe and permanent injuries and Plaintiffs sustained damages.

110.    As a direct and proximate cause of Defendant Coleman placing the unreasonably dangerous Subject Canister into the stream of commerce, Defendant Coleman is strictly liable for Plaintiff Jenny Garcia Berrios injuries and Plaintiffs sustained damages.

WHEREFORE, Plaintiffs demand judgment for damages against Defendant Coleman, together with all costs of this action, and such other additional relief as this court may deem proper.

### COUNT VI: NEGLIGENCE AGAINST TEXSPORT INC.

111.    Plaintiffs re-allege and reaffirm paragraphs one (1) through forty-nine (49) as if set forth fully herein.

112.    At all times material hereto, Defendant Texsport distributed the Subject Stove in its ordinary course of business.

113.    At all times material hereto, Defendant Texsport owed a duty to the consuming public in general, and to Plaintiffs in particular, to exercise reasonable care to manufacture, design, import, and sell the Subject Stove free from unreasonable risk of harm when used in its intended manner.

114.    At all times material hereto, Defendant Texsport owed a duty to its customers, and

specifically to Plaintiffs, to exercise reasonable care in warning them of the dangers of the Subject Stove of which it knew, or should have known of, at the time the Subject Stove left Texsport's control.

115.   Defendant Texsport negligently placed the Subject Stove into the stream of commerce in a defective and unreasonably dangerous condition.

116.   Defendant Texsport knew or should have known of the dangerous and defective condition of the Subject Stove, including the possibility that it would explode when used by consumers like Plaintiffs to cook with the Subject Canister and had a duty to exercise reasonable care in warning foreseeable users of the dangerous propensities of the Subject Stove.

117.   The dangerous propensities of the Subject Stove existed at the time it was distributed by Defendant Texsport and continued to exist up to and including the time of the occurrence complained of herein.

118.   Defendant Texsport placed the Subject Stove into the stream of commerce with the dangerous propensity of exploding when used by the consumer to cook with the Subject Stove and failed to add a warning of this dangerous propensity.

119.   Plaintiffs relied upon Defendant Texsport's labeling (or lack thereof) when they purchased the Subject Stove.

120.   The Subject Stove was used in the manner it was intended to be used and, in a manner, reasonably foreseeable by Defendant Texsport; namely, Plaintiffs used the Subject Stove, together with the Subject Canister and a medium size pan, to prepare a meal for their family.

121.   At all times material hereto, there was no substantial change to the Subject Stove since it left the possession and control of Defendant Texsport.

122.   Defendant Texsport breached its duty of care by placing the Subject Stove, which

was defective and posed an unreasonable risk of harm to consumers, into the stream of commerce by:

    a.   Selling the Subject Stove despite the lack of a warning of its dangerous propensity on either the product or its label, and despite the foreseeable dangers associated when used without said warnings.

    b.   Failing to ensure that a warning label was affixed to the product itself or its label or packaging, that provided that the Subject Stove, when used as intended, was extremely dangerous and could explode.

    c.   Failing to ensure that a warning label was affixed to the product itself or its label or packaging, that provided precautionary warnings of the propensity to explode.

123.    As a direct and proximate result of Defendant Texsport's breach of its duty of care, Plaintiff Jenny Garcia Berrios sustained severe and permanent injuries and Plaintiffs sustained damages.

WHEREFORE, Plaintiffs demands judgment for damages against Defendant Texsport, together with all costs of this action, and such other additional relief as this court may deem proper.

## COUNT VII: STRICT LIABILITY AGAINST TEXSPORT, INC.

124.    Plaintiffs re-allege and reaffirm paragraphs one (1) through forty-nine (49) as if set forth fully herein.

125.    At all times material hereto, Defendant Texsport placed the Subject Stove into the stream of commerce.

126.    Defendant Texsport placed the Subject Stove into the stream of commerce in a defective and unreasonably dangerous condition.

127.    The Subject Stove was defective in that it had a propensity to explode while used in its intended manner. This is a dangerous propensity for a portable butane stove, which was designed to be used fueled by a portable butane canister or cylinder.

128.    Said dangerous condition existed at the time the Subject Stove was placed into the

stream of commerce by Defendant Texsport and continued to exist up to and including the time of the occurrence complained of herein.

129.    Plaintiffs used the Subject Stove in the manner that was intended and expected by Defendant Texsport.

130.    Additionally, the Subject Stove's warning label does not comply with the reporting requirements under the Consumer Product Safety Commission ("CPSC") and is therefore in violation of the Federal Hazardous Substances Act ("FHSA").

131.    As a direct and proximate cause of Defendant Texsport's failure to adequately warn of the defective and unreasonably dangerous condition of the Subject Stove, Plaintiff Jenny Garcia Berrios sustained severe and permanent injuries and Plaintiffs sustained damages.

132.    As a direct and proximate cause of Defendant Texsport placing the unreasonably dangerous Subject Stove into the stream of commerce, Plaintiff Jenny Garcia Berrios sustained severe and permanent injuries and Plaintiffs sustained damages.

133.    As a direct and proximate cause of Defendant Texsport placing the unreasonably dangerous Subject Stove into the stream of commerce, Defendant Texsport is strictly liable for Plaintiff Jenny Garcia Berrios' injuries and Plaintiffs sustained damages.

WHEREFORE, Plaintiffs demand judgment for damages against Defendant Texsport, together with all costs of this action, and such other additional relief as this court may deem proper.

## COUNT VIII: LOSS OF CONSORTIUM AGAINST ALL DEFENDANTS

134.    Plaintiff Jorge Antonio Lopez Maldonado re-alleges and reaffirm paragraphs one (1) through forty-nine (49) as if set forth fully herein, and further states:

135.    At the time of the subject accident, Plaintiffs Jenny Garcia Berrios and Jorge Antonio Lopez Maldonado were married and continue to be married.

136.    As a direct and proximate result of the severe and permanent injuries sustained by his wife, Jenny Garcia Berrios, Plaintiff Jorge Antonio Lopez Maldonado sustained, and will sustain in the future, the loss of his wife's services, conform, companionship and society.

WHEREFORE, Plaintiff Jorge Antonio Lopez Maldonado demands judgment for damages against Defendants, together with all costs of this action, and such other additional relief as this court may deem proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs, hereby demands a trial by jury on all issues so triable.

Dated: July 13, 2022                 Respectfully Submitted,

 */s/ Harris I. Yegelwel*
**HARRIS I. YEGELWEL, ESQUIRE**
Florida Bar No. : 124285
Morgan & Morgan, P.A.
20 N. Orange Avenue Suite 1600
Orlando, FL 32801
Telephone: (407) 418-2081
Facsimile: (407) 245-3392
Primary email: hyegelwel@forthepeople.com
Secondary email: jsamulonis@forthepeople.com

Page **21** of **21**